BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

---

L. A. TAYLOR, *Plaintiff in Error*, v. J. L. DAUTHRY, J. W. EATON AND ATLANTIC COAST LINE RAILWAY COMPANY, *Defendants in Error.*

Opinion filed February 28, 1918.

Petition for rehearing denied April 4, 1918.

E. and D. associated themselves in business for the purpose of producing vegetables. Each contributed money and labor to the enterprise. One of them E., attended to the financial affairs of the joint enterprise, such as the rental of the land, purchasing of fertilizers and borrowing money. He executed an agreement with T. from whom he borrowed a large sum of money to enable him and his partner to produce the crop and agreed to and did give to T. full disposal of all the crops ad full authority over the same to the end that the vegetables should be shipped to a firm of commission merchants in New York until T. had been paid in full.

*Held*, that as between T. and D. in an action of replevin for a carload of the vegetables produced by the partners, T. had the right of possession.

Writ of Error to Circuit Court for Seminole County, J. W. Perkins, Judge.

Judgment reversed.

*Wilson & Housholder,* for Plaintiff in Error;

*Dickinson & Dickson* and *George A. DeCottes,* for Defendants in Error.

ELLIS, J.—This is an action of replevin by L. A. Taylor, plaintiff in error here, against J. L. Dauthry, J. W. Eaton and Atlantic Coast Line Railway Company, defendants in error here, for three hundred and fifty crates of celery loaded at Rand's Siding in Seminole County on the railroad company's track, and claimed by J. L. Dauthry.

There appears to have been no plea filed by the railroad company.    The defendant Eaton pleaded that he had no interest in the property and made no claim to it, and never had possession of it.    J. L. Dauthry pleaded not guilty.

At the conclusion of the testimony the court instructed the jury to find for the defendants, which they did, fixing the value of the property at $490.00.    Judgment was entered that J. L. Dauthry was entitled to the possession of the property and that he was entitled to a return of it, and judgment was also entered against L. A. Taylor and the sureties on the bond for the value of the property and costs.

Taylor took a writ of error.

There are twenty-two assignments of error, only one of which it seems necessary to discuss, as that assignment if well founded will require a reversal of the judgment.    In the view we take of the case the remaining questions are immaterial and wholly unnecessary to a determination of the case, and not likely to arise again upon another trial.

The material facts in the case are undisputed. The celery was raised by Eaton upon land rented by him; Dauthry had a third interest in the crop. In February, 1916, Eaton and Taylor entered into the following agreement:

"This contract made and entered into this the 4th day of February, A. D. 1916, by and between J. W. Eaton of the County of Seminole and State of Florida, party of the first part and L. A. Taylor of the same county and State, party of the second part; WITNESSETH, That, WHEREAS the party of the first part, the said J. W. Eaton is the owner of all crops of Lettuce and Celery being and growing in and upon that certain piece or parcel of land in Seminole County and State of Florida on the South side of the Brick Road leading out on the west end from the City of Sanford and being the same property on which the said J. W. Eaton now resides, containing by estimation approximately six acres, and WHEREAS the party of second part hereto, the said L. A. Taylor, has this day advanced to the said J. W. Eaton, the sum of Three Thousand Dollars, lawful money of these United States of America, Now, Therefore, in consideration of the premises and in consideration of the sum of three thousand dollars (3,000.00) hereinbefore mentioned, receipt of which is hereby acknowledged, the party of the first part does hereby give and grant unto the party of the second part the full disposal of all of said crops above described, and all of said celery and lettuce grown in and upon the above described premises shall be, and the said J. W. Eaton hereby contracts and agrees to and with the said L. A. Taylor, that he will and that he is hereby bound to ship all the above described lettuce and celery to the Commission firm of Munfort & Houch of New York, or as long as the said J. W. Eaton owes any

part of the $3000.00 herein mentioned, and then as long as the New York market is as good as any other market to be shipped to, and he the said L. A. Taylor is hereby granted full authority over said lettuce and celery.

"It is mutually understood and agreed by and between the parties hereto that the said L. A. Taylor shall have full power and authority over all of said lettuce and celery and shall furnish to the said J. W. Eaton full shipping directions, and shall handle all of said crops for the account of J. W. Eaton.

"It is further understood and agreed that the expense of gathering and loading said crops in and upon the cars at loading stations shall be borne by the said J. W. Eaton.

"It is further mutually understod and agreed that the entire crop of lettuce and celery herein mentioned and described shall be handled by the firm of Munfort and Houch, Commission Merchants of New York, N. Y., as long as the said J. W. Eaton owes any part of the $3000.00 herein mentioned, and then as long as the New York market is as good as any other market to be shipped to; for the account of J. W. Eaton, and that a full and complete settlement and accounting shall be furnished to the said Eaton by said Munfort & Houch at the close of the cropping season 1916.

"IN WITNESS WHEREOF the parties hereto have executed these presents in duplicate originals and delivered to each other duplicate originals hereof this the day and year first above written·

"J. W. EATON, (Seal)
"L. A. TAYLOR," (Seal)

"Witnesses

A. K. Powers."

The land upon which the celery was grown was rented

by Eaton for the crop of 1915-1916. He made the crop on that place and the celery in litigation was part of that crop, and the same referred to in the above agreement.

The defendant Dauthry and the defendant Eaton, to use the words of the latter, farmed land together at the latter's place during the last cropping season. Dauthry came to Eaton's house and lived with the latter from July, 1915, until the Spring of 1916. During that time they raised the crop together. This arrangement was therefore in existence when the contract was entered into between Taylor and Eaton. It does not appear from the evidence that any particular part of the crop of lettuce and celery belonging to Mr. Dauthry, that is to say the lettuce and celery growing on any particular part of the land, or that in any certain rows was segregated and set apart to him as his exclusive property. The arrangement between him and Eaton was a kind of partnership. Mr. Dauthry said "I had a third interest in that crop." "This celery was cut from the field in which I owned a third interest." Again: "I had a third interest in the crop that was growing on the place." "I put some money into that crop. I do not know just exactly the amount now. I helped to grow it."

Here was a partnership, an agreement under which both men contributed money and labor. Eaton appeared as the active partner. He rented the land, made the financial arrangements. Whether Dauthry was a silent partner or not, he appears to have known of the agreement between Eaton and Taylor, but even if he did not know of its existence the partnership in which he was interested was bound by the agreement made in the interests of the business by the member of the partnership who seemed to be with the consent of Dauthry making the arrangements for carrying on the farming operations. In

such a case one partner will not be heard to lay claim to any particular part of the partnership property in view of financial failure and thus defeat a creditor who advances money or supplies fertilizers to enable the business to be carried on.

The judge below directed the verdict for defendants because he was "convinced by that instrument (Exhibit No. 2) that it carries no title or the right of possession." The instrument referred to is the one copied herein.

In this conclusion we think the judge erred. The agreement expressly gave and granted to Taylor "the full disposal of all the crops" therein described. All the celery and lettuce grown was to be shipped to Munfort and Houch of New York as long as Eaton owed any part of the three thousand dollars, and "L. A. Taylor is hereby granted full authority over said lettuce and celery." There is other language in the contract equally strong showing it to be the intention of the parties that Taylor was to have full authority and control over the crop to the end that it should be shipped to the commission firm named. It would be difficult to frame sentences showing more clearly the intention of the parties that Taylor should have the disposal of the crop and full authority over it. That means right of possession.

The plaintiff's counsel sought to introduce evidence the effect of which tended to show that Munfort and Houck were the real parties in interest, but much of this evidence was excluded from the jury upon objection by defendant's counsel. The point is strongly pressed here by defendant's counsel, but we think the question has been eliminated; anyway the court below seemed not to regard it and rested its judgment upon the theory that the contract was ineffectual as the basis of any right in the

plaintiff to the possession of the celery, which we think was erroneous.

The judgment is therefore reversed.

BROWNE, C. J., TAYLOR, WHITFIELD AND WEST, J. J., concur.